H. F. SIVLEY ET AL. *v.* N. A. CRAMER.

[61 South. 653-431.]

1. MONOPOLIES. *Antitrust laws. Scope. Contracts. Restraint of trade. Validity. Good will. Burden of proof.*

Our antitrust statute only intended to include within its provisions those contracts which were invalid under the common law as against public policy.

2. CONTRACTS. *Restraint of trade. Validity.*

Contracts whereby the parties thereto or either of them, are restrained from engaging in business are divided into two classes: First, those which are a part of a transaction involving the good will of a business, which are designed to protect such good will; second, those which have for their primary object the formation of a monopoly in a given business.

3. SAME.

Contracts of the second class are void. In determining whether contracts of the first class are void it must be considered with reference to the situation, business and objects of the parties

and in the light of all the surrounding circumstances with reference to which it was made; and if it then appear that the restraint contracted for is necessary for the protection of the legitimate interest of the party in whose favor it is imposed and also not injurious to the public interest, it will be valid, otherwise not.

4. SAME.

All contracts in restraint of trade, where the reasonableness does not appear from the face thereof, are *prima facie* detrimental to the public interest and void; and the burden of showing the reasonableness of such a contract by evidence *aliunde* rests upon the party seeking to enforce it, and a contract made upon the sale of an insurance agency, whereby the seller agreed not to conduct any insurance agency in four counties for a period of ten years, will be held void, in the absence of evidence by the buyer showing its reasonableness; there being nothing upon the face of the contract to show that such an extention was necessary to protect the good will of the business sold.

5. DEFINITION. *Good will.*

The good will of a business is the probability that the customers will resort to the old place for the purpose of trade.

APPEAL from the circuit court of Neshoba county.
HON. C. L. DOBBS, Judge.

Suit by H. F. Sivley against N. A. Cramer. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*E. B. Cooper* and *J. R. Byrd,* for appellant.

*G. E. Wilson,* for appellees.

No brief of counsel on either side found in the record.

SMITH, C. J., delivered the opinion of the court.

On and prior to the third day of April, 1907, H. F. Sivley and W. B. Sivley, Jr., under the firm name of Sivley & Co., were conducting a fire insurance agency at Newton, Newton county, Miss.; and J. D. King and N. A. Cramer were conducting a similar business at Philadel-

phia, Neshoba county, Miss. On April 3, 1907, King &
Cramer sold out their insurance agency to Sivley & Co.
for the sum of one thousand, two hundred and fifty dol-
lars, and agreed not to conduct together, separate, or
apart or be interested in, any fire insurance agency in the
town of Philadelphia, Miss., or in the counties of New-
ton, Neshoba, Leake, or Winston, for a period of ten
years, without the consent of Sivley & Co. Afterwards,
appellee, in violation of this contract, again established
an insurance agency in the town of Philadelphia, and
as the agent of several insurance companies began so-
liciting and writing insurance policies; whereupon this
suit was instituted by appellants to recover from him
damages for breaking his contract. After purchasing
this agency, Sivley & Co. only conducted it for a short
time, thereafter transacting all of their business from
their office at Newton. At the close of the evidence for
appellants the court on motion excluded it, and instructed
the jury to find for appellee, and from a verdict and judg-
ment accordingly this appeal is taken.

At a former day of this term the judgment of the court
below was affirmed, and counsel for appellants now sug-
gest and earnestly contend that we erred in so doing.
One of the grounds of the motion to exclude is that "the
contract sued upon is in violation of the antitrust laws
of the state of Mississippi." In *Cumberland Telephone
Co.* v. *State,* 100 Miss. 102, 54 So. 670, 39 L. R. A. (N. S.)
277, it was held that our antitrust statute "only intended
to include within its provisions those contracts in re-
straint of trade, . . . that were invalid as against
public policy before the enactment of the statute." It
will therefore be necessary for us to ascertain what the
common law is with reference to contracts of the char-
acter here under consideration.

Contracts whereby the parties thereto, or either of
them, are restrained from engaging in business, have
been divided into two classes: "First, those which are

a part of a transaction involving the good will of a business, which are designed to protect such good will, and to that end to restrain some person or persons from engaging in business; and, second, those which have for their primary object, not the protection of good will, but the formation of a monopoly in a given business." It will be observed that the contract here in question is of the first class, and what is herein said must be taken as referring alone to contracts of that character. When such contracts first began to come under the consideration of the courts, it was supposed, and so held, that any restraint upon a man's right to exercise his trade, calling, or profession, was against public policy and void; but later it began to be supposed, and to be held by the courts, that such a restraint, if reasonable, was not detrimental to the public interests, and therefore valid. When this position began to be taken by the courts, it seems first to have been held that such contracts would be valid, if their operation was confined to a small area and to a limited period of time. Afterwards, probably during the first half of the last century, the test of time and space, without more, was found unsatisfactory, and the rule now seems to be that, while time and space are important factors to be taken into consideration, they are not necessarily of themselves determinative of the matter.

In determining whether or not such a contract is injurious to the public, it must be considered with reference to the situation, business, and objects of the parties, and in light of all the surrounding circumstances with reference to which it was made; and if it then appear that the restraint contracted for is necessary for the protection of the legitimate interests of the party in whose favor it was imposed, and also that the interests of the public are not injuriously affected thereby, it will be valid, otherwise not. All contracts in restraint of trade, where the reasonableness does not appear from the face thereof, are *prima facie* detrimental to the pub-

lic interest and void; and the burden of showing the reasonableness of such a contract by evidence *aliunde* rests upon the party seeking to enforce it. *Horner* v. *Greaves,* 7 Bingham, 744; 11 Ency. Evidence, 439. In the case at bar there is nothing on the face of the contract indicating that it is necessary for the protection of appellants' interest that appellee be restrained from conducting an insurance agency within the limits of the four counties mentioned, or, if necessary, that such restraint would not be detrimental to the public interest. The good will of a business "is the probability that the customers will resort to the old place for the purpose of trade." Appellants should have introduced evidence to establish this probability; that the business was of such character as to, or that it in fact did, draw its custom from the four counties mentioned; and then, if it further appeared that the restraint imposed was not detrimental to the public interest, the contract would have been enforceable.

The only evidence on this point which has attracted our attention is contained in the following questions and answers, and is too vague and indefinite for this purpose: "Q. Why did you extend it over three counties? A. Because there was renewals in all three of the counties. Q. What do you mean by that? A. They had business in each of the counties. Q. You mean that they had written policies in these other counties? A. Yes, sir. Q. And they had a record of it? A. Yes, sir. Q. Where did you get the information that they had written in these other counties? A. Mr. Cramer and I looked over his register."

It may be that the court can take judicial notice of the fact that, in order for the good will of a business to be protected, the party selling it must be restrained from again engaging in business in the immediate vicinity of the old place, and therefore that a contract restraining a party from engaging in business within the limits of a village, or any defined small area, would be reasonable;

but such is not the case here. The nature of a fire insurance agency is such that its patrons must of necessity be confined principally to the vicinity thereof; and while it may be that this agency was of such proportions that it drew its custom from a larger area than is usual, this fact must be made to clearly appear from the evidence.

*Suggestion of error overruled.*