DECK AND DECKER PERSONNEL CONSULTANTS, LTD., Respondent,

v.

Doris Dean PIGG, d/b/a Dean Pigg Employment Agency, Appellant.

No. KCD 29002.

Missouri Court of Appeals, Kansas City District.

Aug. 29, 1977.

Craig A. Van Matre, Van Matre & Van Matre, Columbia, for appellant.

James C. Butcher, Butcher, Marshall & Cline, Columbia, for respondent.

Before SOMERVILLE, P. J., and WASSERSTROM and TURNAGE, JJ.

PER CURIAM.

Defendant-appellant (hereinafter referred to as employee) was enjoined from engaging in the employment agency business for a period of one year in a restricted area at the behest of plaintiff-respondent (hereinafter referred to as employer).

The injunctive relief granted, and from which employee appeals, represented enforcement of a covenant not to compete contained in a written contract of employment which was terminable at will by either party. Employee left employer's hire after approximately three years service and set up her own employment agency.

Although the spatial and temporal limitations spelled out in the restrictive covenant have not been questioned as being unreasonable, employee seeks reversal of the judgment below and dissolution of the injunction for a myriad of other reasons.

Employee attacks employer's right to enforce the restrictive covenant because of a discrepancy between employer's name as it appeared in the employment contract and its correct corporate name. This point is not well taken as there was evidence from which the trial court could and obviously did find that notwithstanding the misnomer the employment contract was executed by and on behalf of employer corporation and binding upon it. *H. W. Underhill Const. Co. v. Nilson*, 3 S.W.2d 399, 400 (Mo.App.1928); and *DeMaria & Janssen v. Baum*, 227 Mo.App. 212, 52 S.W.2d 418, 420 (1932).

The trial court is faulted for granting the requested injunctive relief because it did so without taking into consideration the "unclean hands" of employer's president, sole stockholder, and chief executive officer. Employee's lack of specificity regarding "wherein and why" the hands of employer's alter ego were besmirched, equitably speaking, fails to comply with Rule 84.04(d). In so failing, no viable point is presented for appellate review. See *Simpson v. Island View Sales Corp.*, 540 S.W.2d 624 (Mo.App.1976). Its deficiency is further compounded by the fact that although employee contends that the trial court manifested its refusal to consider the doctrine of "unclean hands" by the rejection of evidence offered by employee, no reference is made to the rejection of any specific evidence. Further discourse on this point is unwarranted.

Employee's next point, that the evidence "overwhelmingly indicates" that employer had no protectible interest to justify equitable enforcement of the restrictive covenant, is disposed of by recognizing and applying a few well established principles of law pertaining to such covenants and the scope of review of court tried cases.

The natural repulsion of a free enterprise society toward restraints of trade has engendered a literal "sea" of case law, periodicals, annotations and treatises touching upon the validity and enforcement of restrictive covenants of the nature of the one at hand. An extensive compilation of them is contained in *Arthur Murray Dance Studios of Cleveland v. Witter*, 105 N.E.2d 685 (Ohio Com.P.L.1952), and it is recommended reading for those wishing to become quickly

exposed by a single source to the many and multifacted principles applicable to covenants not to compete. Notwithstanding the vast "sea" of available authority, Missouri cases exist which are dispositive of the precise issue presently under consideration.

 Although an employer cannot extract an enforceable restrictive covenant from an employee merely to protect himself from competition, a temporally and spatially limited restraint may be deemed reasonable and enforceable in equity if a legitimate protectible interest of the employer is served. *Prentice v. Rowe,* 324 S.W.2d 457, 461 (Mo.App.1959); and *Renwood Food Products v. Schaefer,* 240 Mo.App. 939, 223 S.W.2d 144, 151 (1949). Customer contact is judicially recognized in this state as being a legitimate protectible interest. *R. E. Harrington, Inc. v. Frick,* 428 S.W.2d 945, 950 (Mo.App.1968); and *Renwood Food Products v. Schaefer,* supra, 223 S.W.2d at 151. More particularly, in *Haysler v. Butterfield,* 240 Mo.App. 733, 218 S.W.2d 129 (1949), decided by this court's predecessor, an employee's contact with prospective employers to whom job applicants of an employment agency were referred was held to constitute a legitimate protectible interest of the employment agency for the purpose of enforcing a covenant not to compete by way of injunction.

 The power of an appellate court to set aside a decree or judgment in a court tried case on the ground that it is "against the weight of the evidence" is to be exercised "with caution and with a firm belief that the decree or judgment is wrong". *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The record in the instant case is permeated with evidence, direct and circumstantial, from which the trial court could reasonably find that contacts with prospective employers to whom job applicants were referred by employer were a vital and integral part of employer's success as an employment agency, and that during the course of her employment the employee acquired a close and valuable rapport with such prospective employers. Gauged by *Murphy v. Carron,* supra, and guided by *Haysler v. Butterfield,* supra, this court, absent throwing caution to the wind, cannot say that the trial court erred in holding that employer had a legitimate protectible interest which was sufficiently adequate to support equitable enforcement of the restrictive covenant.

Employee, by way of a separate point, takes the unusual tack of indicting *Haysler v. Butterfield,* supra, on the dual grounds that it was "wrongly decided" and does not apply to the case at hand. A swift and sure substantive response to this point exists— what was said regarding disposition of the preceding point relied upon by employee fully answers this point. Deprecation of the applicability of *Haysler v. Butterfield,* supra, is undeserved and no sound reason for overruling it has been advanced.

 Although somewhat ineptly put by employee, she perceivably contends in her final point that as her employment was terminable at will by employer, requisite mutuality was lacking to justify granting equitable relief by way of injunction to enforce the covenant not to compete. Mutuality in the sense used by employee obviously refers to the lack of any binding obligation on employer to continue employee's services for a specified term, while at the same time ostensibly possessing the right to prohibit employee for a fixed period in a fixed area from engaging in like employment on termination of the employer-employee relationship.

Employee and employer have both failed to cite any definitive authority to support their respective positions concerning employee's final point. This court's independent research discloses that the issue raised by employee's final point, although relatively novel, has been previously addressed in a minority of other jurisdictions with varying results. *Sherman v. Pfefferkorn,* 241 Mass. 468, 135 N.E. 568, 569 (Mass.1922), represents the view that a contract of employment containing a covenant not to compete does not lack mutuality when the employer and the employee stand on equal footing with respect to its termination, i. e., where employment is terminable at will by either

party, and the employer is not precluded from resorting to equity to enforce the restrictive covenant. Compare *City Ice & Fuel Co. v. McKee,* 57 S.W.2d 443 (Mo.App. 1933), with *Sherman v. Pfefferkorn,* supra. *Byram v. Vaughn,* 68 F.Supp. 981 (D.D.C. 1946), represents the opposite view, namely, that a contract of employment containing a covenant not to compete, which is terminable at the will of either party, lacks mutuality in the sense presently contended by employee and for that reason leaves the ranks of contracts which a court of equity will enforce by the drastic remedy of injunction. Parenthetically, *Byram,* at 983, carefully distinguishes lack of consideration which renders a contract invalid and unenforceable at either law or equity from lack of mutuality in the sense contended by employee in the instant case which may render a covenant not to compete in a contract of employment unenforceable in equity. The court in *Byram,* recognizing that basic doctrines of equity come into play when deciding whether or not to grant injunctive relief, refused to enjoin violation of the restrictive covenant there at issue because of lack of mutuality.

This court feels constrained to hold that the view expressed in *Sherman v. Pfefferkorn,* supra, should prevail in this case and, therefore, the trial court did not abuse its discretion in enforcing the restrictive covenant in question by way of injunction, particularly so inasmuch as employee, before quitting, worked for employer for approximately three years pursuant to the contract of employment.

Judgment affirmed.

All concur.